People v A.M. (2024 NY Slip Op 50582(U))

[*1]

People v A.M.

2024 NY Slip Op 50582(U)

Decided on May 14, 2024

County Court, Putnam County

Molé, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 14, 2024
County Court, Putnam County

The People of the State of New York,

against
A.M., Defendant.

Docket No. FYC-70048-24

Putnam County District Attorney's Office
Attn: First ADA Breanne M. Smith
40 Gleneida Avenue
Carmel, NY 10512
Christopher York, Esq.
Counsel for the Defendant
328 Clock Tower Commons Drive 
Brewster, NY 10509

Anthony R. Molé, J.

The following papers were read and considered on the motion made by the People of the State of New York, pursuant to CPL 722.23 (1), for an order preventing removal of this action to the Family Court, Putnam County:
Motion Papers:
• Affirmation in Support of ADA Breanne M. Smith (dated March 26, 2024); Unmarked Exhibit Attachments
• Reply to Motion by Defense Counsel Christopher York, Esq. (dated March 29, 2024)
Upon review of the foregoing papers and the court file, the Court finds and determines the following:
In 2017, the New York State Legislature enacted the "Raise the Age Law," which defines a 16-or 17-year-old who was charged with a felony committed on or after October 1, 2018, or October 1, 2019, respectively, as an "adolescent offender" (CPL 1.20 [44]; see Penal Law § 30.00 [1], [3] [a]). The Raise the Age Law created a youth part of Superior or Supreme Court to decide on the proper forum for such prosecutions (see CPL 722.10 [1]) — thus bringing this case before the undersigned as the presiding judge of the Youth Part.
I. Procedural History and Background
Defendant, an adolescent offender ("AO"), is currently 17 years old (born 2006). He is charged by felony complaint with assault in the second degree in violation of Penal Law § 120.05 (2), a class D felony (a violent felony). The AO was arraigned in the Youth Part on February 27, 2024,[FN1]
when he entered a plea of not guilty and was released on his own recognizance. Subsequently, the AO waived the six-day felony hearing.
Although the AO is charged with a violent felony, the facts as delineated do not meet any of the three prongs as enumerated in CPL 722.23 (2). Because none of the aggravating factors enumerated in CPL 722.23 (2) exist here, the People indicated that they would make a written motion to prevent removal based on the existence of "extraordinary circumstances" sufficient to override the preference for removal to family court (CPL 722.23 [1]).[FN2]

The People timely filed such motion on March 26, 2024,[FN3]
being within 30 days after the AO's arraignment on the felony complaint (see id. [1] [a]). The AO filed opposition papers on April 2, 2024. No reply papers were filed by the People.
In their moving papers, the People requested a hearing under CPL 722.23 (1) (c), which the Court conducted on May 6, 2024. Based on the evidence adduced at the hearing and the parties' written submissions, the Court makes the following findings of fact and conclusions of law.
[*2]II. Legal Standard
CPL 722.23 (1) (a) states that the court "shall order the removal of the action to the family court," unless the District Attorney's Office files a written motion to block the removal predicated on extraordinary circumstances. But pursuant to CPL 722.23 (1) (d), the Court "shall deny" the People's motion to prevent removal "unless the Court makes a determination . . . that extraordinary circumstances exist that should prevent the transfer of the action to family court" (emphasis added).
The Legislature did not define the term "extraordinary circumstances" as it is used in the Raise the Age Law. So, this Court must follow the state's rules of statutory interpretation.
"We begin with our governing rule of statutory construction, namely that courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used. When statutory terms are not defined, dictionary definitions serve as useful guideposts in determining the word's ordinary and commonly understood meaning" (People v Williams, 37 NY3d 314, 317-318 [2021] [internal quotation marks and citations omitted]). While usually "the text itself is generally the best evidence of legislative intent" (People v Ballman, 15 NY3d 68, 72 [2010]), the absence of the term's definition compels the Court to "resort to other means of interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 92, Comment).
Determining the meaning of statutory language sometimes calls for reference to dictionary definitions (see People v Andujar, 30 NY3d 160, 163 [2017]). The term "extraordinary" is defined as "[b]eyond what is usual, customary, regular, or common" (Black's Law Dictionary [11th ed 2019], extraordinary). It is similarly defined elsewhere as "going beyond what is usual, regular, or customary" (Merriam-Webster Online Dictionary, extraordinary [https://www.merriam-webster.com/dictionary/extraordinary [last accessed May 14, 2024]). Trial courts have referred to the common dictionary definition of the term "extraordinary," and interpreted the "plain meaning" of the phrase "extraordinary circumstances" as a set of facts that are "exceptional" and "highly unusual" (see e.g. People v R.U., 70 Misc 3d 540, 547 [Co Ct, Nassau County 2020]; People v J.P., 63 Misc 3d 635, 649-650 [Sup Ct, Bronx County 2019] [where the term was interpreted to be inclusive of "far from common, very outstanding, very remarkable"]).
Trial courts have also reviewed the legislative history of the Raise the Age Law to ascertain legislative intent in aspiring to construe the term's meaning. Legislators expressed that in assessing extraordinary circumstances, the presiding judge should consider the youth's situation holistically, including both aggravating factors and mitigating circumstances (People v T.P., 73 Misc 3d 1215[A], *3 [Co Ct, Nassau County 2021] [quotation marks omitted]). Citing to the legislative record, trial courts have recognized that State Assembly members debating the Raise the Age Law expressed that the threshold of extraordinary circumstances is intended to be a very high standard for the District Attorney to satisfy; hence, preventing removals of adolescent offenders to the family court should be extremely rare (see People v O.C., 80 Misc 3d 1204[A], *2 [Fam Ct, Erie County 2023]). "The Legislature . . . specifically contemplated that [*3]the courts would shape and determine the meaning of extraordinary circumstances in evaluating the factors of each individual case" (see People v B.H., 63 Misc 3d 244, 248-250 [Sup Ct, Nassau County 2019] [internal quotation marks omitted]). Notwithstanding all of the foregoing, "one could question what set of facts would need to be presented to constitute extraordinary circumstances" (Clark v Boyle, 210 AD3d 463, 469 [1st Dept 2022], lv denied 39 NY3d 974 [2023] [internal quotation marks omitted]).
The legislative intent is indeed reliably manifest. The statute, as strictly construed, renders the matter presumptively subject to family court removal. With the foregoing legal standard and principles in mind, the Court now turns to the merits of the People's motion.[FN4]

III. Factual Findings
Here, the AO is charged by way of a felony complaint with one count of assault in the second degree in violation of Penal Law § 120.05 (2). That offense is a violent felony as defined in Penal Law 70.02 (1) (c). The charge stems from February 15, 2024, when the AO allegedly struck the victim, G.B., multiple times with a metal baseball bat, causing swelling and bruising to the victim's hands, arms, and legs. G.B. is a minor (born 2008).[FN5]

Relevant here, a person commits intentional assault in the second degree when, "[w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). Physical injury "means impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]).
Case law confirms that a baseball bat can be deemed a dangerous instrument. Depending on how it is used, a baseball bat can be readily capable of causing serious physical injury and thus satisfy the definition of a "dangerous instrument" (see Penal Law § 10.00[10], [13]; People v Torres, 211 AD2d 509, 509 [1st Dept 1995] [conviction affirmed where a child's toy baseball bat was found to constitute a dangerous instrument]). Hence, attacking another person with a baseball bat can support a conviction of assault in the second degree (see e.g. People v Gurgov, 129 AD3d 989, 990 [2d Dept 2015]; People v Smoke, 43 AD3d 1332, 1333 [4th Dept 2007], lv denied 9 NY3d 1039 [2008]; People v Coffin, 263 AD2d 780, 781 [3d Dept 1999]).
According to the victim and three witnesses, the victim encountered the AO at an Acme supermarket in the Town of Southeast and attempted to avoid him, so that a verbal or physical confrontation would not arise. When leaving the supermarket with his girlfriend, and as he was walking to enter a vehicle, the victim avers that the AO rushed at him with a dark-colored [*4]baseball bat, chased him around the vehicle, and struck him on his hands, arms, and legs with the bat until the AO fled the scene in his girlfriend's vehicle. The victim's girlfriend called the police to report the incident. The victim claims that as a result of the attack, he suffered pain and bruising to his arms and left thigh.
Pursuant to a search warrant, police later seized the metal baseball bat from the vehicle of the AO's girlfriend. On February 20, 2024, an investigator from the Putnam County Sherriff's Office contacted the AO's father in order to speak to the AO, advising him that the AO was facing an assault charge and he should promptly turn himself in to police. A few days later, the AO's father contacted the investigator and told him that the AO assaulted the complainant because he had threatened to rape the AO's younger sister.[FN6]
The AO, accompanied by his father and his attorney, appeared at the Sherriff's Office on February 27, 2024 to surrender based on the criminal charge. He was arraigned that same day.
A. The People's Arguments
The People argue that compelling facts are present here to warrant retention of this case in the Youth Part. In so doing, they are of the view that the Legislature envisioned this exact sort of scenario for a court to find the existence of extraordinary circumstances in order to block removal to family court and keep the case for adjudication in the Youth Part. 
The People's position in making this motion appears to be premised on the ground that removal to family court would merely amount to allowing the AO's criminal behavior to go without consequences. The People claim that the AO had malicious intent by carrying out a carefully planned violent attack on the victim, which was premeditated, and is corroborated by video camera footage capturing the incident. The People argue that the AO's calculated and brutal attack lacked impulsivity since he stalked, taunted, and intimidated the victim, was armed with a weapon, and caused him bodily harm by striking him with a metal baseball bat. The People insist that the AO's conduct is cruel and heinous — thereby, rising to the level of extraordinary circumstances.
The People also rely on the certified disciplinary records from the AO's high school as an aggravating factor, which they believe demonstrate he has violent tendencies, despite school intervention, assistance, and suspensions. The People urge that the AO has several instances dating back to 2019 where he previously instigated confrontations with other students, and his prior school history reflects that he harassed, threatened, and assaulted other students. The People maintain that the AO's documented behavior has been troublesome for several years given his issues throughout high school and the disciplinary measures imposed upon him. Since prior services offered to him through school have been to no avail, the People believe that the AO would not be amenable to the services offered in family court, nor would the heightened services there steer him in the right direction since he is "heading down a path of violence and destruction."
In addition, the People posit that the AO comes from a unified family, lives in a stable [*5]household, and has the benefit of parental guidance. They represent that based on the AO's appearance and demeanor in court, he is not facing economic or educational difficulties. The Court, however, finds this contention to be merely an assumption made by the People as will be delineated below.
B. The AO's Contentions
The AO does not dispute the factual aversions set forth in the People's moving papers. He counters that removal to family court is warranted here since extraordinary circumstances are not present. The AO explains that the reason prompting the incident is that the complainant threatened he would rape the AO's younger sister which, in turn, infuriated him and led him to confront the complainant in the first instance. He concedes that his conduct was not legally justified, but it should be "morally understandable" because he was trying to protect his sister. The AO represents that he carried out the assault as a warning to the victim to stay away from her. The AO also points to his upbringing, personal difficulties, and the cultural differences as an Albanian in how he poorly handled the situation.
The AO claims that he did not intend to cause the victim grave injury inasmuch as he had no intention to strike him in the head with a metal baseball bat, that he deliberately avoided contact with the victim's head, and the victim suffered minor, not serious, injuries as a result of the attack. According to the AO, he exercised restraint in how and where he struck the victim with the bat.
C. Testimony of the AO's Sister
The AO's sister, 16 years old, testified at the hearing on behalf of the AO in order to corroborate his reason for attacking the victim. Overall, the Court finds the AO's sister to be credible.
The AO's sister testified that well before the underlying incident, the complainant asked her several times to be his girlfriend, but she declined since it is against her Islamic religion, yet he continued to pressure her about a potential relationship and attempted to keep it a secret. According to the AO's sister, the complainant became frustrated and at some point, the complainant followed her around, gave her "dirty" looks that scared her, and the complainant also sent her text messages that he was "going to get" her. The AO's sister also testified that a few days before the incident (around the beginning of February 2024), the complainant sent her text messages saying that he would rape her; thus, she perceived his conduct as threatening and uncomfortable, so she asked her friends to accompany her to classes due to safety concerns. The AO's sister stated that after the assault, she reported the complainant's behavior to the school principal, who represented to her that he would speak with the complainant to address the matter.
The AO's sister conceded that she did not tell the AO about the text messages, nor did she show them to the police or the school principal. However, she testified that at some point, their mother took her cellphone and showed the AO the texts that were sent by the complainant to her. The AO's sister explained that she is no longer in possession of those text messages from the complainant because her mother took her cellphone, implying that she may have deleted [*6]them from her cellphone. Notably, the AO's sister testified that she told the AO about the complainant's conduct towards her. The AO's sister further testified that she learned about the assault after it occurred, and she knew the AO would protect her as her older brother. 
IV. Conclusions of Law
CPL 722.23 (1) (b) states that every motion to prevent removal of an action to family court must "contain allegations of sworn fact based upon personal knowledge of the affiant." The undersigned has considered the felony complaint and the sworn written statements made to police by three eyewitnesses whose content fall within the mandate of CPL 722.23 (1) (b). The People rely upon the supporting depositions, which were subscribed and verified under penalty of perjury; thus, the content therein also falls within the requirement of CPL 722.23 (1) (b).
The Court has additionally reviewed the prosecutor's supporting affirmation and the exhibits annexed thereto, inclusive of photographs depicting the victim's injuries, screenshots of social media postings made by the AO messaging the victim, and the AO's school disciplinary records. The Court has also considered counsel's arguments on the motion.
All things considered, this case presents a close call. Extraordinary circumstances must be determined on a case-by-case basis. Ordinary cannons of construction warrant a full and liberal effectiveness to the legislative purpose of the Raise the Age Law. The Court underscores that the Legislature contemplated that most youth part cases should be removed to family court.
Properly framed, the issue is whether the People have proven that the circumstances in the AO's case are so exceptional and beyond what is "usual," so as to overcome the presumption that this matter is "one in 1,000 cases" that would be kept by the criminal court and it should not be removed to family court (People v T.P., 73 Misc 3d 1215[A] at *3). The Court finds that the People did not meet that heavy burden here.
The People contend that a determination of extraordinary circumstances must include consideration of the totality of circumstances, including the AO's prior transgressions and his conduct surrounding this offense. The Court disagrees. This case is not one of the rare or uncommon cases that falls within such criteria (see People v J.G., 81 Misc 3d 1239[A], *3 [Fam Ct, Erie County 2024]; People v J.R., 65 Misc 3d 1223[A], *5-6 [Co Ct, Nassau County 2019]). The Court finds that the cannons of construction, the legislative history, and the circumstances surrounding passage of the Raise the Age Law are contrary to the People's position that extraordinary circumstances are present here to warrant preclusion of removal to family court. In reaching this conclusion, the Court notes, again, that there is a strong presumption of removing an adolescent offender's case to the family court (see People v W.H., 69 Misc 3d 278, 279 [Sup Ct, Kings County 2020]).
In support of their argument that extraordinary circumstances exist to prevent removal, the People author a descriptive story leading up to the timeline of the AO's arrest. The prosecutor's supporting affirmation, weaving a story of suspense and violence, attempts at times to fill in gaps and provide some testimonial evidence. It is rife with alleged statements made between the AO and an investigator from the Putnam County Sheriff's Office, as are set forth in the People's CPL 710.30 notice. Some of the factual allegations relied upon by the People are [*7]based upon conversations with a police officer. The prosecutor's supporting affirmation also contains other hearsay statements that are unsupported by an affidavit from the investigator, who has personal knowledge of the facts (see CPL 722.23 [1] [b]; People v J.B., 63 Misc 3d 424, 428-429 [Co Ct, Westchester County 2019]). Reference by the People is also made to "video surveillance obtained by law enforcement" of the Acme parking lot area and the interior of the supermarket, which were not included as part of their motion.
The People maintain that the AO offered no proof of the alleged threat by the complainant to the AO's sister, noting that his opposition papers lack any such claimed evidence. The People fault the AO and his counsel for the AO's refusal to turn over his cellphone so that the prosecution can extract forensic data therefrom to retrieve deleted text messages in an effort to corroborate the AO's allegation that the complainant threatened to rape the AO's teenage sister. Also, the People aver that the AO initially denied involvement in the attack by telling police he had been home the entire day on the date of the incident.
The AO highlights in opposition that the People have a very high burden to prevent removal. Despite testimony provided at the hearing by the AO's sister, the People assert that the AO has failed to adduce proof that the complainant threatened at any time to rape her. At the same time, the burden here is on the People. It cannot be shifted to the AO. There is no indication that the AO's sister fabricated her version of the story. During her testimony, she appeared to the undersigned as candid, forthright, and sincere based on her demeanor. She credibly testified at the hearing by providing responsive answers based on what she could remember.
In assessing "extraordinary circumstances," the undersigned must consider the AO's predicament in its totality, including both aggravating factors and mitigating circumstances. Aggravating factors make it more likely that the matter should remain in the Youth Part. Conversely, mitigating circumstances make it more likely that the matter should be removed to family court. With that said, the Court must carefully look at this case having "its own intricacies and nuances" in deciding the People's motion to prevent removal (People v S.J., 72 Misc 3d 196, 201 [Fam Ct, Erie County 2021]).
Aggravating factors include whether the AO: (1) committed a series of crimes over multiple days; (2) acted in an especially cruel and heinous manner, and (3) led, threatened, or coerced other reluctant youth into committing the crimes. On the other hand, mitigating circumstances are meant to include a wide range of individual factors, including economic difficulties, substandard housing, poverty, difficulties learning, educational challenges, lack of insight and susceptibility to peer pressure due to immaturity, absence of positive role models, behavior models, abuse of alcohol or controlled substances by the AO, or by family or peers (see People v S.J., 72 Misc 3d at 199).
In the present scenario, the allegations in this case are very serious. The AO's actions should in no way be minimized. The AO's actions show calculation and malice. At the same time, if the AO's claim that the complainant made threatening remarks that he would rape his sister is also accepted as true, his conduct, while highly concerning and unjustified, is not exceptional to a very marked extent.
True, the AO exhibited aggressive and vicious conduct in purposefully confronting and [*8]attacking the victim. He engaged in dangerous behavior. The AO, in essence, implicitly concedes as much by not rebutting the account of the events as outlined in the People's motion papers. As to aggravating factors, the AO allegedly committed a crime on a single day. He did not commit a separate series of crimes over multiple days. The AO's premeditation and planning in the commission of the offense is an aggravating factor. While his conduct in assaulting the complainant with a metal baseball bat was arguably heinous and cruel, the AO did not lead, threaten, or coerce other reluctant youth in assaulting the victim, despite the fact that the AO was with his teenage girlfriend at the time. The AO's girlfriend was not charged or deemed an accomplice.
Although the AO's actions in physically attacking the complainant with a baseball bat are reprehensible, the Court holds that the surrounding facts of this incident are not overly exceptional to prevent removal. In drawing this conclusion, it has been held that a physical attack, in and of itself, does not compel a finding of extraordinary circumstances (see e.g. People v A.M., 77 Misc 3d 1227[A], *3 [Sup Ct, Erie County 2023]).
Cases where extraordinary circumstances were found and kept in the youth part include armed robbery with other youth (see People v B.T., 73 Misc 3d 1238[A], *7-8 [Co Ct, Nassau County 2021]); repeatedly stabbing someone with a kitchen knife (see People v V.M., 73 Misc 3d 1224[A], *3-4 [Co Ct, Nassau County 2021]); firing a handgun where the codefendants, acting in concert, were facing firearm-related offenses and attempted murder in the second degree (see People v R.U., 70 Misc 3d 540, 541-548 [Co Ct , Nassau County 2020]; People v D.S., 69 Misc 3d 1214[A], *1 [Co Ct, Nassau County 2020]); a brutally violent attack where codefendants repeatedly punched, stomped, and kicked a person who was unconscious and helpless, without signs to discontinue the assault until the codefendants were eventually restrained (see People v C.S., 68 Misc 3d 1208[A], *4 [Fam Ct, Onondaga County 2020]); armed robbery using a collapsible type of knife with a 3½ inch blade, where the victim was cut on both hands and suffered deep lacerations, exposing the victim's bones and arteries in both hands, which required approximately 30 stitches and caused the victim severe bleeding and substantial pain (see People v K.F., 67 Misc 3d 1215[A], *2-5 [Co Ct, Nassau County 2020]); and where codefendants, both charged with attempt to commit the crime of gang assault in the first degree, first provoked a homeless man suffering from mental health issues, and then proceeded to taunt, punch, and kick him repeatedly in his head, causing the man to suffer a broken nose with significant swelling to his head requiring hospitalization, all while an uncharged individual recorded the incident on video and livestreamed it on "Facebook Live" (see People v Y.L., 64 Misc 3d 664, 665 [Co Ct, Monroe County 2019]).
As the AO correctly points out, the cases cited by the People in their moving papers are not on point, given that those courts did not find the existence of "extraordinary circumstances"; and therefore, denied the People's respective motions to prevent removal in those cases (see People v J.P., 63 Misc 3d at 651-652; People v B.H., 63 Misc 3d at 248-250).
At the hearing, the People cited a case from this Court: People v S.B. (Docket No. FYC-70002-20 [Co Ct, Putnam County 2020, Rooney, J.]), which they rely on in support of their application. In People v S.B., Judge Rooney granted the People's motion to prevent removal to family court based upon a finding of extraordinary circumstances (see. id. at 5-8). The facts of that case however can be easily distinguished with this one. There, the youth defendant [*9]confronted another student regarding a dispute over money at a high school basketball game, provoked a fight in a school parking lot, preceded by a threat, before the youth defendant stabbed the student in the back with a fixed 3½ inch blade knife, causing puncture wounds that required sutures and medical treatment at a hospital (see id. at 2, 7; see also People v C. S., 68 Misc 3d 1208[A] at *4). In stark contrast here, the AO's confrontation with the victim was prompted by the remarks and conduct at the AO's sister, not about a monetary matter, the weapon used by the AO was a metal baseball bat, and the victim suffered minor injuries. Hence, the People's reliance on People v S.B. is misguided.
The Court further notes that there are several analogous cases where, similarly as here, an adolescent offender was charged with assault in the second degree, but fellow jurists did not find the presence of extraordinary circumstances, and thus, ultimately denied the People's motions to prevent removal (see e.g. People v J.L., 78 Misc 3d 1231[A], *2-3 [Fam Ct, Erie County 2023]; People v M.R., 68 Misc 3d 1004, 1010-1012 [Sup Ct, Kings County 2020]; People v J.S., 66 Misc 3d 1213[A], *1-6 [Co Ct, Nassau County 2020]; People v J.R., 65 Misc 3d 1223[A] at *1-6; People v L.L., 2019 NY Slip Op 32330[U], *1-4 [Sup Ct, Queens County 2019]; cf. People v J.G., 81 Misc 3d 1239[A] at *1-3; Matter of Isaiah D., 72 Misc 3d 1120, 1122 [Fam Ct, New York County 2021]).
As the People would have it, the AO's past misconduct and transgressions in school should be an aggravating factor. "[T]he People may not, in any way, use the AO's juvenile delinquency history, including any past admissions or adjudications," in a motion to prevent removal (People v J.J., 74 Misc 3d 1223[A], *3 [Co Ct, Ulster County 2022]; see Family Ct Act § 381.2 [1]).
Equally unavailing is the People's contention that the mitigating factors offered by the AO are not present or should be cast aside. The AO specifically asserts, among other things, that his father is disabled, suffering from several medical conditions, and that his father's health has been deteriorating over the last few years. According to the AO, he felt the need to take on the patriarchal role of protecting his sister's honor and defending her as her older brother. Additionally, the AO explains that as an Albanian, he has been called religious epithets and obscenities as a Muslim by students who are bullying him at high school. According to the AO, he has been repeatedly harassed by fellow students, including multiple threats of being assaulted. It may, for example, provide some context as to why the AO retaliated in such a manner.
Moreover, the AO avers that his family was oppressed in Albania, and they are struggling financially here due to his father's disability and severe health complications that prevent him from working, including his father's recent admission to the intensive care unit (ICU). This is somewhat corroborated with the AO's representation that his counsel fees are being paid by a "family friend trying to help him." Furthermore, the AO is currently pursuing a GED. He has intentions of joining the military after turning 18. The AO turns the age of majority in a matter of months. Relevant to this consideration is that if the AO's case remains in the Youth Part, it will be adjudicated under the criminal law where the AO faces the prospect of incarceration.[FN7]

Further, the AO's behavior here demonstrates the kind of poor judgment and impetuous conduct that militates in favor of removal to the family court in order to redirect his errant path. In fact, this is his first time facing criminal proceedings.
Next, the People rely heavily on the AO's school disciplinary records dating back to 2019 — which were admitted into evidence at the hearing without objection — for keeping this case in the Youth Part until disposition. In examining the potential mitigating circumstances, the Court notes that although the People state that the AO's school disciplinary records evince that he has a troubled history leading to suspensions, the Court finds that his disorderly behavior, use of racial slurs, insubordination, and acts of intimidation, harassment, and bullying are some of the exact mitigating factors expressed by the Legislature in the consideration of extraordinary circumstances (see People v B.H., 63 Misc 3d at 250). While the People paint a picture of the AO's school disciplinary records to show that he is a troubled youth, the AO's school disciplinary records are not in any way connected to the underlying offense he is charged with. The Court has balanced the aggravating and mitigating factors in concluding to remove this matter to family court.
The Court further rejects the People's supposition that the AO is not amenable to, nor he would not in any way benefit from, the heightened services available in family court. The AO has faced challenges growing up that have significantly impacted his insight and judgment. Considering the totality of the circumstances, the Court finds that the AO is probably in greater need of the heightened services available in family court to aid him in addressing his behaviors and help him develop the skills necessary for rehabilitation. The People thus failed to overcome the burden of demonstrating that the AO is not amenable to or would not benefit from the heightened services provided in family court (see People v K.K., 82 Misc 3d 1218[A], *3 [Fam Ct, Erie County 2024]).
The Court adds that in enacting the Raise the Age Law, the Legislature concluded that adolescent offenders should be treated differently than adult criminal defendants within the criminal justice system given the unique circumstances and needs of the young population. The aspirational goal of that scheme is that "children who are alleged to have committed crimes be rehabilitated rather than incarcerated and punished" (People v J.L., 78 Misc 3d 1231[A] at *3). Removal to family court furthers the Legislature's articulated policy goals.
While mindful that the assault charge the AO is facing is serious, the violent nature of the crime, and the AO's conduct being very dangerous, the Court nonetheless must be guided by the statutory scheme. The decision here, though not an easy one, comports with the spirit of the Raise the Age Law. Transferring to family court is supported in the plain language of the relevant provisions and the legislative history. 
"Reform is about changing the dynamics. The intent of the [Raise the Age Law] is to give adolescent and juvenile offenders an opportunity to rehabilitate. The goal is avoidance of criminal records and incarceration when possible and in appropriate circumstances" (People v D.P., 62 Misc 3d 1226[A], *3 [Fam Ct, Erie County 2019]).
Removal to family court does not mean that the AO is getting a free pass. There are consequences in transferring this case to family court — which will result in a juvenile delinquency proceeding under Family Court Act article 3.
The undersigned is aware that even upon removal, the Family Court Act provides for the possible placement upon adjudication at a facility developed for treatment while protecting the public. This Court is cognizant that various beneficial services and programs are readily available for a juvenile who is placed. This matter can be effectively adjudicated in family court where either rehabilitation or detention can be imposed. Having considered the totality of the record, this matter does not present to be so extraordinary as a basis for retaining the case in the Youth Part.
V. Conclusion
In sum, the Court holds that extraordinary circumstances do not exist here to prevent the removal/transfer of this case to the family court. The Court further concludes that the People did not meet their very high burden to prevent removal. Based on the totality of the circumstances, and after balancing the aggravating factors and mitigating factors in this case, the Court finds that the aggravating factors do not outweigh the mitigating circumstances. The People have failed to establish the existence of "extraordinary circumstances" warranting the retention of the AO's case in the Youth Part (see People v B.H., 63 Misc 3d at 248-250). This case shall therefore be removed to the Family Court, Putnam County.
The People's remaining contentions, to the extent not specifically addressed herein, have been evaluated and determined to be without merit. Accordingly, it is hereby:
Ordered that the People's motion, made pursuant to CPL 722.23, to prevent removal to the Family Court is DENIED; and it is further
Ordered that this case shall be transferred to the Family Court, Putnam County; and it is further
Ordered that the Youth Part file shall be sealed, as is required by CPL 725.15; and it is further
Ordered that the AO and a member of the Putnam County Probation Department shall appear in Family Court on July 1, 2024, at 2 p.m. before the Hon. Joseph J. Spofford, Jr., J.F.C. for further proceedings thereon.[FN8]

A separate Order of transfer/removal shall issue herewith by the Clerk of the Court.[FN9]

This constitutes the opinion, decision, and order of the Court.
Dated: May 14, 2024
Carmel, New York
E N T E R:
Hon. Anthony R. Molé
Judge of the County Court

Footnotes

Footnote 1:The Hon. Joseph J. Spofford, Jr., J.C.C., conducted the arraignment in the undersigned's absence.

Footnote 2:By waiving the statutory six-day hearing, the parties have, in effect, agreed that the Court base its determination to remove the case to family court solely on the People's underlying motion to block removal.
Footnote 3:The District Attorney's Office did not file a notice of motion (see CPL 722.23 [1] [a]; CPLR 2214 [a]; see also People v A.M., 77 Misc 3d 1227[A], *1 [Sup Ct, Erie County 2023]; People v J.A.D., 70 Misc 3d 1222[A], *1 [Co Ct, Nassau County 2021]). In any event, the Court will disregard such error in order to consider the merits of the motion since the AO is not prejudiced, and a briefing schedule was previously established on the record with respect to the People's anticipated application (see generally CPLR 2001).

Footnote 4:At the close of the hearing, the parties consented to waive the statutory timeframe for the Court's written decision on the People's motion (see CPL 722.23 [1] [e]; People v M.R., 72 Misc 3d 791, 792 n 1 [Co Ct, Nassau County 2021]).
Footnote 5:The Court will interchangeably refer to G.B. as the victim and the complainant in this Decision.

Footnote 6:The Court will refer to her as the AO's sister throughout this decision since she is a minor and for purposes of maintaining her privacy. 

Footnote 7:Other sentencing options may be available if the AO is adjudicated a youthful offender under CPL Article 720.

Footnote 8:The AO has prior family court history before Judge Spofford under Family File No. 14112.
Footnote 9:The statute uses the terms "removal" and "transfer" interchangeably regarding the transfer of youth part adolescent offender proceedings to the Family Court. Neither term is defined in the Raise the Age Law. CPL 722.23 (1) (g) states that cases "transferred pursuant to this section . . . shall not be considered removals subject to [Family Court Act § 308.1 (13)]" (see generally Family Ct Act § 308.1 [3]; People v D.L., 62 Misc 3d 900, 901 n 1 [Fam Ct, Monroe County 2018]).