Matter of Clark v Boyle (2022 NY Slip Op 06316)

Matter of Clark v Boyle

2022 NY Slip Op 06316

Decided on November 10, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 10, 2022

Before: Acosta, P.J., Mazzarelli, Gesmer, Pitt, JJ. 

Index No. 70324/22 Appeal No. 16310-M-2177 Case No. 2022-02281 

[*1]In the Matter of Darcel D. Clark, etc., Petitioner,
v
Hon. Denis J. Boyle, etc., et al., Respondents.

Darcel D. Clark, District Attorney, Bronx (David M. Cohn of counsel), for petitioner.
The Bronx Defenders, Bronx (Steven Benathen of counsel), for B.G., respondent.

Petition pursuant to CPLR article 78 to prohibit the enforcement of an order, Supreme Court, Bronx County (Denis J. Boyle, J.), entered on or about January 28, 2022, which ordered the prosecution of an adolescent offender to proceed in accordance with CPL 722.23(1), and an order, same court (Naita A. Semaj, J.), entered on or about March 21, 2022, which denied petitioner's motion to prevent removal of the prosecution to Family Court pursuant to CPL 722.23(1), and seeking a declaratory judgment interpreting CPL 722.23(2)(c)(i), unanimously denied, and the proceeding dismissed, without costs.
In 2017 the legislature enacted the "Raise the Age Law," which defined a 16- or 17-year-old who was charged with a felony committed on or after October 1, 2018, or October 1, 2019, respectively, as an "adolescent offender" (CPL 1.20[44]; Penal Law § 30.00[1], [3][a]). The Raise the Age Law created a youth part of Supreme Court, presided over by Family Court judges with specialized training, to decide on the proper forum for such prosecutions (CPL 722.10[1]). As relevant here, when an adolescent offender (AO) is charged with a class A (non-drug) felony or a violent felony, the justice presiding over the youth part must determine at a hearing held within six days of arraignment whether the People have established by a preponderance of the evidence that "the defendant caused significant physical injury to a person other than a participant in the offense," or "displayed a firearm, shotgun, rifle or deadly weapon as defined in the penal law in furtherance of such offense," or committed one of several enumerated sexual offenses (CPL 722.23[2][c]). If the court does not make such a determination, it must send the case to Family Court, but the People can then move to prevent removal to Family Court upon a showing "that extraordinary circumstances exist that should prevent the transfer of the action to family court" (CPL 722.23[1][d]).
The facts that we will now apply to the framework outlined above are particularly tragic. Not even three hours into 2022, several youths encountered a man in the Fordham Road subway station who was celebrating the new year by blowing a party horn. One of the youths, respondent BG, was 17 years old at the time. Apparently irritated by the noise, one or more members of the group told the man to stop blowing the horn. An argument ensued, and as two members of the group approached the man, he grabbed a fanny pack containing his wallet, credit cards, hundreds of dollars in cash, and wireless headphones, because, as he told the police, he was worried the group would steal his property. One of the members of BG's group gave a statement claiming that, after the man grabbed the pack, he appeared to be brandishing an object that looked like a firearm. However, he was unarmed. BG and another one of the youths approached the man and tried to pull the fanny pack, and a third member of the group, who was holding a knife, approached the man. The man [*2]attempted to run away, but the group chased him and then surrounded him, while one person pulled on his fanny pack. Another person tripped the man, who fell to the floor. Then, as captured on surveillance video, BG grabbed the man's neck, tackled him, punched him, and kicked his head. While the man was in a fetal position on the floor, BG and four others repeatedly punched and kicked him in the head and body, as captured on a separate video. The first video showed BG pulling the fanny pack, and one of his codefendants later admitted to taking it.
A third video showed that, after BG rummaged through the man's pockets, BG threw him onto the subway tracks. BG then jumped down onto the tracks and moved the motionless man slightly away from the tracks, toward the edge closer to the platform. At that point a bystander, Ronald Hueston, jumped onto the tracks, tried to assist the man, and told BG's group to "get out of here." BG's group left. Within about a minute, a southbound D train approached the station. Hueston approached the train waving his arms, and then unsuccessfully attempted to go back onto the platform. The train operator turned off the train's electrical power supply, causing the train to stop after sliding forward at a decreasing speed. Nevertheless, the train struck Hueston and killed him. An autopsy determined that Hueston died by being crushed between the train and the platform. After the train stopped about one foot away from the man who Hueston tried to save, he regained consciousness while still on the tracks, and was taken to a hospital, where he received surgery for an arm fracture.
Respondent Hon. Denis J. Boyle, the judge assigned to the youth part, determined after the retention hearing that BG was not subject to trial there, and transferred the case to Family Court. Noting that the term "significant physical injury" is not defined in the statute, Justice Boyle turned to the legislative history. He observed that the Assembly member "with primary responsibility for explaining the statute to his fellow legislators stated . . . that the statute contemplated a 'hybrid . . . somewhere between the requirement of a physical injury and serious physical injury,'" and that he further described it as 'something more than a bruise but less serious than disfigurement." Noting the death of Hueston and the surviving victim's fractured arm, Justice Boyle concluded that the significant injury prong of the statute had been satisfied (while also finding that swelling and bruising on the surviving victim's face and other parts of his body were not significant).
Justice Boyle then turned to the question whether the preponderance of the evidence established that defendant "caused" the significant injuries. The court stated that "[t]he necessary analysis requires an appreciation that the provisions of the Raise the Age statute distinguish principles of accomplice liability and even of causation as relevant to the Penal Law as compared to responsibility [*3]of a defendant for purposes of the application of Criminal Procedure Law section 722.23(2)(c)." The court cited two cases decided by a Judge of the Nassau County Court, People v J.H. (66 Misc 3d 779 [County Ct, Nassau County 2020]) and People v E.B.M. (63 Misc 3d 576 [County Ct, Nassau County 2019]). In the former case the court found that the matter qualified for removal to Family Court because the adolescent offender did not "directly cause" the victim's injuries, since the allegation against him was that he did not stab or beat the victim, but rather stopped the victim's friends from coming to the victim's aid. The court quoted one of the Assembly members who participated in the debate over the Raise the Age legislation, who stated that " 'the caused significant physical injury' factor is intended to disqualify 'the sole actor who causes the conduct outlined in this test' and to disqualify 'the [AO] who directly caused the injury, who displayed the weapon in his or [her] own hand.' " (66 Misc 3d at 783). In People v E.B.M., the court retained the matter in the Youth Part, because, even though the felony complaint accused the defendant of gang assault and acting in concert with several other individuals in punching, kicking and stomping the victim, "each AO codefendant was personally responsible for directly causing" the victim's injuries (63 Misc 3d at 584). The court relied on statements from the same legislator quoted in People v J.H., who observed that prosecution in the Youth Part was not intended for a defendant "who was 'just present or nearby'" during an assault, but rather "an individual who directly caused the significant injury." (id.).
Applying the principles identified in those two cases to the matter before it, Justice Boyle found that, while BG "caused" the surviving victim to fall onto the tracks, he did not cause Hueston's death for purposes of the Raise the Age Act, since Hueston's heroic actions and the appearance of the train that struck him constituted "intervening events." The court also found that BG did not "cause" the surviving victim's arm fracture for purposes of the Act, because the evidence showed that different assailants meted out a variety of blows to the victim, at different points during the attack, and that, as a result, "[i]t cannot be determined from this record when in the course of this assault the significant physical injury, that being the injury to the surviving victim's arm, was sustained, or how or by whom among the assailants." Justice Boyle distinguished People v J.H. on the basis that the injury was not "the result of a cumulative effort on the part of the defendant together with others" but rather a "discrete one which, on this record, could be attributed to a number of different type blows inflicted by various participants."
The People moved under CPL 722.23 (1) (d) to prevent removal to Family Court. Respondent Justice Naita A. Semaj denied the motion, concluding that the case did not involve [*4]"extraordinary circumstances." The court interpreted that phrase to reflect "a very high standard," implicated only as "an extremely rare occurrence," "limited" to cases where there has been "a truly violent felony." Justice Semaj cited to the Assembly record, in which a member commented that "[t]ransfer to the family court should be denied only when highly unusual and heinous facts are proven and there is a strong proof that the young person is not amenable or would not benefit in any way from the heightened services in family court." Applying that standard, the court concluded that the People failed to demonstrate extraordinary circumstances, since "[i]n a time where guns and shootings have become normalized, and in a train station with minimal space to run or hide, [BG]'s reaction to [the surviving victim] reaching in his bag, during an argument cannot be said to be extraordinary, regardless of whether it was reasonable or assumptive."
Justice Semaj rejected the People's argument that BG engaged in "heinous" conduct by pushing the surviving victim onto the tracks and leaving him there unconscious, observing that this argument was "rebutted by the video footage offered by the People," which showed that the surviving victim "was conscious at the time he was pushed on to the tracks and even if he became unconscious once on the tracks, [BG] and another young person are seen going into the tracks and seemingly moving [him], possibly inadvertently, but . . . out of harm's way." The court further noted that Hueston chose to jump onto the train tracks, and that BG left after he "was told to leave by [Hueston]."
The District Attorney of Bronx County now brings this original petition pursuant to CPLR 506(b)(1) and 7804(b), seeking a writ of prohibition of these two orders, which if granted would result in BG being tried in Supreme Court rather than Family Court. Petitioner maintains that the initial decision declining to retain the case in the Youth Part, to the extent it found that BG did not cause the surviving victim's fractured arm or Hueston's death, within the meaning of CPL 722.23(2)(c)(i), so exceeded the court's authority and disregarded settled legal principles to warrant issuance of the writ. Petitioner argues the same with respect to the order denying the People's motion to preclude removal, disagreeing with the court's conclusions that the circumstances were not "extraordinary."
"A writ of prohibition against a judge may be issued only when a court acts or threatens to act without jurisdiction in a matter of which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction" (Matter of Oglesby v McKinney, 7 NY3d 561, 565 [2006] [internal quotation marks and ellipses omitted]). "Prohibition cannot be used merely to correct errors of law, however egregious and however unreviewable" (id. [internal quotation marks omitted]). The Court of Appeals has stressed that, in the context [*5]of criminal proceedings, the writ should be issued "only when a court exceeds its jurisdiction or authorized power in such a manner as to implicate the legality of the entire proceeding, as for example, the prosecution of a crime committed beyond the county's geographic jurisdiction" (Matter of Rush v Mordue, 68 NY2d 348, 353 [1986]). "Although the distinction between legal errors and actions in excess of power is not always easily made, abuses of power may be identified by their impact upon the entire proceeding as distinguished from an error in a proceeding itself" (Matter of Holtzman v Goldman, 71 NY2d 564, 569 [1988] [internal citation omitted]).
Petitioner argues that, in interpreting the Raise the Age Act, the retention hearing court's "departure from the statutory text and from precedent is so manifest as to constitute an unauthorized exercise of discretion." For example, she asserts that the court "exceeded its authority" by reading into the causation requirement for significant injury the word "direct," which does not appear in that section of the statute, and which led the court to conclude that BG was insulated by the assistance of others in the assault on the surviving victim and by Hueston's decision to go to his aid. With respect to the decision denying petitioner's motion to block the removal on grounds of "extraordinary circumstances," petitioner claims that, since it "was based on factual findings that lack record support, her ruling constitutes an improper exercise of judicial authority." We find that these protestations are a routine disagreement with the way in which the two courts, in deciding to remove the matter to Family Court and then rejecting petitioner's motion to preclude that removal, applied and interpreted the relevant law and the facts before them. These are things courts do each and every day, and saying that they constitute an excess of the court's authority does not make it rise to the level where a writ of prohibition may issue. Certainly in this case petitioner has not identified anything in the two decisions that "implicate[d] the legality of the entire proceeding" (Matter of Rush v Mordue, 68 NY2d at 353).
Nor should a writ be issued on the basis that the People have no right to take a direct appeal from the underlying orders (see CPL 450.20). It must be presumed that the legislature purposefully declined to provide an avenue for the People to review the decision by a Justice in the Youth Part to remove the case to Family Court. Further, the Court of Appeals has determined that, it would be "neither civilized nor even rational" in criminal cases to permit collateral review of decisions based solely on the basis of nonreviewability, and "would make speedy trial a legal impossibility" (Matter of State of New York v King, 36 NY2d 59, 63-64 [1975]).
The People ask us to issue a declaratory judgment as to the meaning of "cause" in CPL 722.23(2)(c)(i) and to find that the motion judge abused its discretion in interpreting [*6]"extraordinary circumstances" as used in CPL 722.23(1)(d). Our decision not to issue the writ is not to say that we agree with respondent justices' interpretation and application of those terms in the underlying decisions. Indeed, one could question the first judge's basis for concluding that BG did not "cause" the surviving victim's fractured arm or Hueston's death. As petitioner argues, causation in criminal matters is ordinarily dependent upon whether a person set in motion the events that led to harm to the victim, or materially contributed to those events; there is no requirement that the person be the "sole" cause (see People v Li, 34 NY3d 357, 369 [2019]). The word "cause" in the statute at issue is nowhere qualified by the word "direct," and respondent provides no basis for his conclusion that it should be afforded a different meaning in the context of determining jurisdiction as opposed to criminal liability. It is true, as respondents note, that the discussion in the Assembly included a comment from the member who introduced the legislation that the defendant had to be the "sole actor," for the action to proceed in Supreme Court. However, that statement was a direct answer to a question about whether defendants would be disqualified from removal to Family Court if they were "just present or nearby during the alleged offense or occurrence." That was not the case with BG, who, if not the "sole actor," was far from a bystander and in fact appears to have been at the center of the assault against the surviving victim. Further, it could be argued that one who deliberately throws a person on subway tracks should foresee that a good samaritan will place themselves in harm's way to go to their aid. With respect to the second decision, one could question what set of facts would need to be presented to constitute "extraordinary circumstances," if the present scenario, involving a brutal gang assault and deliberate placement of a person on the subway tracks, does not qualify.
Nonetheless, for the reasons discussed above, we decline to grant petitioner's request to issue a declaratory judgment. Since we have concluded that a writ should not issue under the circumstances, any declaratory relief would amount to an advisory opinion since it would not have an "immediate practical effect on the conduct of the parties" (New York Pub. Interest Research Group v Carey, 42 NY2d 527, 530 [1977]). M-2177 — Darcel D. Clark, etc. v Hon. Denis J. Boyle, etc., et ano.
Motion for a stay, denied.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 10, 2022