People v K.T. (2025 NY Slip Op 51139(U))

[*1]

People v K.T.

2025 NY Slip Op 51139(U)

Decided on July 18, 2025

County Court, Putnam County

Molé, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 18, 2025
County Court, Putnam County

The People of the State of New York,

against
K.T., Defendant.

Docket No. FYC-70078-25

Putnam County District Attorney's Office
Attn: Chief ADA Chana Krauss
40 Gleneida Avenue
Carmel, NY 10512
The Law Office of Paul D. Petrus, Jr.
Attn: Paul D. Petrus, Esq.
Counsel for the Adolescent Offender, K.T. 
420 Lexington Avenue — Suite 2450
New York, NY 10170

Anthony R. Molé, J.

The following papers were read and considered on the motion made by The People of the State of New York, pursuant to CPL 722.23 (1), for an order preventing removal of this action to Family Court, Putnam County:
Motion Papers:
• Notice of Motion; Amended Notice of Motion; Prosecutor's Affirmation in Support; Exhibits 1-3
• Attorney Affirmation in Opposition; Memorandum of Law in Opposition; Exhibits A-G
Upon review of the foregoing papers and the court file, the Court finds, holds, and determines the following:
In 2017, the New York State Legislature enacted the "Raise the Age Law," which defines a 16-or 17-year-old who was charged with a felony committed on or after October 1, 2018, or October 1, 2019, respectively, as an "adolescent offender" (CPL 1.20 [44]; see Penal Law § [*2]30.00 [1], [3] [a]). The Raise the Age Law created a youth part of the Superior or Supreme Court to decide on the proper forum for such prosecutions — thus bringing this case before the undersigned as the presiding judge of the Youth Part in Putnam County (see CPL 722.10 [1]; People v Guerrero, 235 AD3d 1276, 1277 [4th Dept 2025]).
I. Procedural History and Background
Defendant is an adolescent offender (hereinafter referred to as the "AO") (born 2006). On April 10, 2025, he was charged by felony complaint with possessing a sexual performance by a child in violation of Penal Law § 263.16, a class E felony. The alleged crime committed by the AO occurred on or about June 6, 2024 — weeks before he turned the age of majority. The AO was arraigned in the Youth Part on April 21, 2025, when he entered a plea of not guilty and was released on his own recognizance.[FN1]

Although the AO is charged with a felony, the facts, as delineated, do not meet any of the three prongs that are enumerated in CPL 722.23 (2). Because none of the aggravating factors enumerated in CPL 722.23 (2) exist here, the People indicated that they would make a written motion to prevent removal based on the existence of "extraordinary circumstances" sufficient to override the preference for removal to family court (CPL 722.23 [1]).[FN2]

The People timely filed such motion on May 16, 2025, which they subsequently amended,[FN3]
thus being within 30 days after the AO's arraignment on the felony complaint (see id. [1] [a]). The AO filed opposition papers on June 12, 2025. No reply papers were filed by the People.
Neither the People nor the AO requested a hearing on the motion (see CPL 722.23 [1] [b], [c]). By confirmatory email responses from counsel, the parties consented to waive the statutory timeframe for the Court's written decision on the People's motion (see CPL 722.23 [1] [e]; see e.g. People v A.M., 82 Misc 3d 1249[A], *3 n 4 [Youth Part, Putnam County 2024]; People v M.R., 72 Misc 3d 791, 792 n 1 [Co Ct, Nassau County 2021]). Based on the record and the parties' written submissions, the Court makes the following findings of fact and conclusions of law in deciding the People's motion to prevent removal to family court.
II. Legal Standard
CPL 722.23 (1) (a) states that the court "shall order the removal of the action to the family court," unless the District Attorney's Office files a written motion to block the removal predicated on extraordinary circumstances. But pursuant to CPL 722.23 (1) (d), the Court "shall deny" the People's motion to prevent removal "unless the Court makes a determination . . . that extraordinary circumstances exist that should prevent the transfer of the action to family court."
The Legislature did not define the term "extraordinary circumstances" as it is used in the Raise the Age Law. So, this Court must follow New York's rules of statutory interpretation.
"We begin with our governing rule of statutory construction, namely that courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used. When statutory terms are not defined, dictionary definitions serve as useful guideposts in determining the word's ordinary and commonly understood meaning" (People v Williams, 37 NY3d 314, 317-318 [2021] [internal quotation marks and citations omitted]). While usually "the text itself is generally the best evidence of legislative intent" (People v Ballman, 15 NY3d 68, 72 [2010]), the absence of the term's definition compels the Court to "resort to other means of interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 92, Comment).
Determining the meaning of statutory language sometimes calls for reference to dictionary definitions (see People v Andujar, 30 NY3d 160, 163 [2017]). The term "extraordinary" is defined as "[b]eyond what is usual, customary, regular, or common" (Black's Law Dictionary [11th ed 2019], extraordinary). It is similarly defined elsewhere as "going beyond what is usual, regular, or customary" (Merriam-Webster Online Dictionary, extraordinary [https://www.merriam-webster.com/dictionary/extraordinary [last accessed July 15, 2025]). Trial courts have referred to the common dictionary definition of the term "extraordinary," and interpreted the "plain meaning" of the phrase "extraordinary circumstances" as a set of facts that are "exceptional" and "highly unusual" (see e.g. People v R.U., 70 Misc 3d 540, 547 [Co Ct, Nassau County 2020]; People v J.P., 63 Misc 3d 635, 649-650 [Sup Ct, Bronx County 2019] [where the term was interpreted to be inclusive of "far from common, very outstanding, very remarkable"]).
Trial courts have also reviewed the legislative history of the Raise the Age Law to ascertain legislative intent in aspiring to construe the exact meaning of the term. Legislators expressed that in assessing extraordinary circumstances, the presiding judge should consider the youth's situation holistically, including both aggravating factors and mitigating circumstances (People v T.P., 73 Misc 3d 1215[A], *3 [Co Ct, Nassau County 2021] [internal quotation marks omitted]). Citing to the legislative record, trial courts have recognized that State Assembly members debating the Raise the Age Law expressed that the threshold of extraordinary circumstances is intended to be a very high standard for the District Attorney to satisfy; hence, preventing removals of adolescent offenders to the family court should be extremely rare (see People v O.C., 80 Misc 3d 1204[A], *2 [Youth Part, Erie County 2023]; see People v M.M., 83 Misc 3d 1221[A], *2 [Youth Part, Erie County 2024]). "The Legislature . . . specifically contemplated that the courts would shape and determine the meaning of extraordinary circumstances in evaluating the factors of each individual case" (see People v B.H., 63 Misc 3d 244, 248-250 [Sup Ct, Nassau County 2019] [internal quotation marks omitted]). Notwithstanding the foregoing, "one could question what set of facts would need to be presented to constitute extraordinary circumstances" (Clark v Boyle, 210 AD3d 463, 469 [1st Dept 2022], [*3]lv denied 39 NY3d 974 [2023] [internal quotation marks omitted]).
The legislative intent is reliably manifest. The statute, as strictly construed, renders the matter presumptively subject to family court removal. With those principles in mind, the Court now turns to the merits of the People's motion.
III. Factual Findings
Here, the AO is charged by way of a felony complaint with one count of possessing a sexual performance by a child in violation of Penal Law § 263.16 — a class E felony.[FN4]
The charge stems from allegations that on or about June 6, 2024, the AO transferred an approximately 10-second video to his private "Snapchat" gallery, depicting an adult male attempting to insert his penis into the anus of an infant boy who had no pants on. This is, in essence, alleged possession of a child pornography video by the AO in violation of that penal statute.
On March 25, 2025, a Town Judge of the Justice Court of the Town of Southeast (Gregory L. Folchetti, J.) issued a search warrant based on an application by an investigator of the Putnam County Sherriff's Office, thereby authorizing the seizure of various electric devices owned by the AO. Police executed the search warrant two days later seizing, among other items, the AO's iPhone mobile phone. According to the prosecutor, a search of the AO's iPhone revealed several videos and images depicting child pornography. 
A. The Parties' Arguments
The People contend that this matter must be retained in the Youth Part, and not removed to Family Court, because "[t]he facts in this care are clearly disturbing and extraordinary." The People point to the graphic nature of the subject video that was discovered on the AO's iPhone, adding that police also recovered "numerous very disturbing videos" on his phone — which the People posit that the AO "either recorded himself or recorded someone else masturbating and ejaculating on children's toys." Based on the foregoing, the People assert that the AO committed a series of acts over a certain period of time in addition to the underlying offense he is charged with.
The People contend that extraordinary circumstances exist here inasmuch as the AO kept several unsettling videos on his phone, including the subject video he is charged with, two videos allegedly taken in the AO's home showing a young male masturbating and ejaculating on children's toys, two videos depicting a young male defecating in a bathtub, and an image of a naked infant boy laying on the chest of a naked adult, while the adult is in the process of trying to insert his penis into the anus of the infant boy. The People submit that the acts are very disturbing in nature and the videos are "highly unusual." The Court agrees that the nature of such content is very troubling.
The People assert that the AO's conduct creates a potential danger to the community and [*4]diminishes the safety and welfare of the public. The People argue that removal would not be in the interests of justice, urging that this case is "more suited to be handled in the Youth Part."
B. The AO's Contentions
The AO, in opposition, contends that this case ought to be removed to Family Court since no extraordinary circumstances exist. The AO argues that none of the aggravating factors are present here, inasmuch as he did not commit a series of crimes over a span of several days. The AO also points that there is no allegation that he was the ringleader of any alleged criminal activity.
In addition, the AO argues that the People are improperly using uncharged criminal conduct to satisfy their burden of proving extraordinary circumstances. More specifically, the AO presses that the People misapply the aggravating factor that he allegedly committed a series of crimes over multiple days by claiming that he allegedly committed "a serious of acts . . . over a period of time." The AO distinguishes acts with crimes by noting that the latter consists of charged offenses, whereas the former does not. Based on the foregoing, the AO maintains that the People are wrongly "bootstrapping" the other videos and images discovered on his phone which he was not criminally charged with, by summarily concluding that those videos or images constitute criminal conduct or a crime that he may be criminally prosecuted for, including the video of a person masturbating, defecating, and one video in which a certain person is depicted with feces on himself.
Acknowledging that the videos and images found on his phone are disturbing, the AO maintains that the other videos and images are not criminal in nature and cannot be used to conclude that he committed a "series of crimes" over many days. Thus, the AO advances that the People did not establish extraordinary circumstances based on an incorrect theory that he committed a series of "acts" based on possessing only one video depicting child pornography, given the fact that he was only charged with allegedly committing a single criminal offense — namely, possessing a sexual performance by a child (see Penal Law § 263.16).
Next, the AO asserts that his alleged possession of one single video of child pornography is not cruel or heinous conduct. He protests the People's characterization that he presents as a danger to the community, asserting that the People fail to articulate as to how his mere possession of the subject video poses a danger to the public. In acknowledging that any pornography involving an infant or toddler is unusual and may create a danger when it is circulated on the internet, the AO avers that he did not share the video with anyone and he did not share, post, or distribute the video on any social media sites or the internet. The AO thus stresses that the People have not adduced any evidence that he possessed any other videos of child pornography, other than the lone video that was found on his phone.
Lastly, the AO contends that the mitigating factors outweigh the aggravating factors, thus warranting mandatory removal of this case. In asserting this contention, the AO highlights his academic credentials and supplies copies of his college enrollment verification and copies of certificates for various awards that he received in high school. The AO also provides documentation that he enrolled in therapy and a sex offender treatment program (SOTP) when this case was brought against him.
IV. Conclusions of Law
CPL 722.23 (1) (b) states that every motion to prevent removal of an action to family court must "contain allegations of sworn fact based upon personal knowledge of the affiant." In support of their motion, the People rely upon the felony complaint and the March 2025 search warrant application of Kevin Radovich, an investigator in the Putnam County Sherriff's Office, which was subscribed and verified under penalty of perjury; thus, the content of those items fall within the requirement of CPL 722.23 (1) (b).
In addition, the People submit a written statement, dated May 15, 2025, of Daniel Meury, a criminal investigator with the Putnam County Sherriff's Office. In his statement, Meury lists the nature and content of four videos and two images discovered on the AO's iPhone, including details of the metadata as to precisely when the videos and images were made. The Court notes that Meury's statements were not set forth in a sworn affidavit or affirmation; hence, the Court declines to treat the document as a supporting affidavit or affirmation (see id.; see generally CPLR 2106; 2214 [b]). While the Court has no reason to doubt the veracity of the document since it was made by a police officer, Meury's written statement does not comply with CPLR 2106 because the document does not reflect that it was signed before a notary public or other authorized official (see generally U.S. Bank N.A. v Langner, 168 AD3d 1021, 1023 [2d Dept 2019]); nor does the document reflect that all of the statements therein were subscribed and verified under penalty of perjury; thus, Meury's written statement falls outside the mandate of CPL 722.23 (1) (b).[FN5]
With that said, the Court additionally considered the affirmation in support of the prosecutor, which, as an officer of the court, was affirmed under the penalties of perjury. 
"While the term 'extraordinary circumstances' is not defined in the statute, the legislative history for CPL 722.23 reveals that, in making an extraordinary circumstances determination, courts should 'look at all the circumstances of the case, as well as all of the circumstances of the young person,' including both mitigating and aggravating factors" (People v Guerrero, 235 AD3d at 1277 [ellipses omitted], quoting NY Assembly Debate on 2017 NY Assembly Bill A3009C, Apr. 8, 2017 at 39). "That approach takes into consideration all of the circumstances, and ensures that 'every case is going to be looked at by the judge individually, to determine what kind of factors there are in the case, to determine' whether there are extraordinary circumstances" (People v Guerrero, 235 AD3d at 1277 [ellipses omitted], quoting NY Assembly Debate on 2017 NY Assembly Bill A3009C, Apr. 8, 2017 at 83-84).
Said concisely, extraordinary circumstances must be determined on a case-by-case basis. Ordinary cannons of construction warrant a full and liberal effectiveness to the legislative purpose of the Raise the Age Law. The Court underscores that the Legislature contemplated that most youth part cases should be removed to family court.
Properly framed, the narrow issue in this case is whether the People have proven that the circumstances in the this case based on the AO's alleged possession of a video depicting a sexual performance by a child are so exceptional and beyond what is "usual," so as to overcome the presumption that this matter is "one in 1,000 cases" that would be kept by the criminal court and it should not be removed to family court (People v T.P., 73 Misc 3d 1215[A], at *3). The Court finds that the People failed to meet that heavy burden here.
The Court holds that this case is not one of the rare or uncommon cases that falls within [*5]such criteria (see People v J.G., 81 Misc 3d 1239[A], *3 [Youth Part, Erie County 2024]; People v J.R., 65 Misc 3d 1223[A], *5-6 [Co Ct, Nassau County 2019]). The Court finds that the cannons of construction, the legislative history, and the circumstances surrounding passage of the Raise the Age Law are contrary to the People's position that extraordinary circumstances are present here to warrant preclusion of removal to family court. In reaching this conclusion, the Court notes, again, that there is a strong presumption of removing an adolescent offender's case to the family court (see People v W.H., 69 Misc 3d 278, 279 [Sup Ct, Kings County 2020]).
The AO correctly underscores in opposition that the People have a very high burden to prevent removal. In assessing "extraordinary circumstances," the undersigned must consider the AO's predicament in its totality, including both aggravating factors and mitigating circumstances. Aggravating factors make it more likely that the matter should remain in the Youth Part. Conversely, mitigating circumstances make it more likely that the matter should be removed to family court. In exercising this balance, the Court must carefully look at this case having "its own intricacies and nuances" in deciding the People's motion to prevent removal (People v S.J., 72 Misc 3d 196, 201 [Youth Part, Erie County 2021]).
Aggravating factors include whether the AO: (1) committed a series of crimes over multiple days; (2) acted in an especially cruel and heinous manner, and (3) led, threatened, or coerced other reluctant youth into committing the crimes. On the other hand, mitigating circumstances are meant to include a wide range of individual factors, including economic difficulties, substandard housing, poverty, difficulties learning, educational challenges, lack of insight and susceptibility to peer pressure due to immaturity, absence of positive role models, behavior models, abuse of alcohol or controlled substances by the AO, or by family or peers (see People v S.J., 72 Misc 3d at 199).
Penal Law article 263 was enacted by the Legislature "to eradicate child pornography and thereby combat the sexual exploitation of children" (People v Keyes, 75 NY2d at 346). The enactment was done to protect children from exploitation through sexual performances. "In a legislative declaration enacted with this article, the Legislature found a 'proliferation of exploitation of children as subjects in sexual performances' and declared that '[t]he public policy of the state demands the protection of children from exploitation through sexual performances'" (id. at 346-347, quoting L 1977, ch 910, § 1).
The penal statute that the AO is charged with states that "[a] person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he [or she] knowingly has in his [or her] possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than [16] years of age" (Penal Law § 263.16; see People v Pendell, 164 AD3d 1063, 1064 [3d Dept 2018], affd 33 NY3d 972 [2019]).[FN6]
"By enacting article 263, the New York Legislature intended to 'employ broad measures to eradicate child pornography in all its forms'" (People v Fraser, 96 NY2d 318, 327 [*6][2001], cert denied 533 US 951 [2001], quoting People v Keyes, 75 NY2d 343, 348 [1990]).
The statute, in essence, prohibits depictions of sexual conduct by a child less than 16 years old. "The sexual conduct referred to is performed by a child, not the defendant or a person acting at the behest of the defendant, and the crime is getting access or control of the performance so the defendant can watch it — not necessarily causing the sexual conduct to occur" (People v Grubert, 160 AD3d 981, 983 [2d Dept 2018], lv denied 32 NY3d 902 [2018]).
"While this crime requires proof that the defendant knew of the character and content of the performance, it also specifically requires that the defendant knowingly had the sexual performance by a child in his or her possession or control. To knowingly possess, some affirmative act is required (printing, saving, downloading, etc.) to show that the defendant in fact exercised dominion and control over the images" (People v Urtz, 176 AD3d 1485, 1486 [3d Dept 2019], lv denied 34 NY3d 1133 [2020] [internal brackets, quotation marks, and citation omitted]). "The 'exercise of dominion or control is necessarily knowing, and such 'constructive possession' may qualify as knowing possession'" (People v Kent, 19 NY3d 290, 301 [2012], quoting People v Muhammad, 16 NY3d 184, 188 [2011]).
Child pornography, in whatever forum or medium, is reprehensible. The legislative history of Penal Law article 263 is "replete with references to the enormity of the problem of child pornography" (People v Keyes, 75 NY2d at 348). "The Legislature further urged law enforcement officers to vigorously enforce the provisions of the article" (id. at 347). This was done to eliminate "the social evil of child pornography" (id. at 348). The Court, of course, is cognizant of the fact that the Internet — now more easily available through phones, computers, and various electronic devices — is the most prominent forum where child pornography is distributed and consumed, thus providing "a readily accessible and expansive marketplace for illicit material" (People v Kent, 19 NY3d at 300).
The allegations in this case, no question, are serious. The AO's actions should not be minimized. The AO's conduct in possessing a video depicting child pornography, as well as the other graphic videos found on his phone, are highly concerning. Notwithstanding, the surrounding facts of this incident are not overly exceptional to prevent removal. Relevant to this consideration is that if the AO's case remains in the Youth Part, it will be adjudicated under the criminal law where the AO faces the prospect of incarceration.[FN7]
The People do not make a convincing argument that the AO's alleged possession of this single video — without any evidence that the AO distributed it or continued to seek out more child pornography — is particularly cruel and heinous. Equally unavailing is the People's contention that removal would diminish the safety and welfare of the community, as this claim is speculative and conclusory, since there is no evidence to suggest the AO distributed or sought out child pornography to, and from, other persons.
The AO correctly points out that the People conflate "act[s]" with a "crime" in their moving papers in relation to the other videos that were discovered on his phone. An act itself is not a "crime" or "offense" as those terms are defined in the Penal Law. "'Crime' means a misdemeanor or a felony" (Penal Law § 10.00 [6]; see id. at §§ [4], [5]). An "'[o]ffense' means conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of [*7]this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same" (see id. at § [1]).
Disturbing as they are, the Court declines to rely on the AO's possession of certain other videos as an aggravating factor to retain this matter in the Youth Part, even if his alleged possession of those videos arguably constitute uncharged crimes (see People v S.G., 80 Misc 3d 1206[A], *3 [Youth Part, Erie County 2023]). This case does not present a scenario where the AO is accused of committing sexual acts against a certain underage victim (see e.g. People v L.S., 67 Misc 3d 1226[A], *1-2 [Youth Part, Nassau County 2020] [where the adolescent offender was charged with criminal sexual act in the first degree, attempted rape in the first degree, and sexual abuse in the first degree]). For example, an aggravating factor, not applicable here, would be if the AO "unlawfully engaged in sexual intercourse, oral sexual conduct, anal sexual conduct[,] or sexual contact as defined in [Penal Law § 130.00]" (CPL 722.23 [2] [c] [iii]). But he is not accused of unlawfully engaging in any of the foregoing conduct (see id.).
Nor do the alleged other videos depicting a person urinating and defecating, as jarring and grotesque as they are, evince that the AO himself was engaging in unlawful sexual conduct. The term "sexual conduct" is defined by statute. It "means actual or simulated vaginal sexual contact, oral sexual contact, anal sexual contact, sexual bestiality, masturbation, [or] sado-masochistic abuse. Sexual conduct by a child less than 16 years of age includes, among other things, "lewd exhibition of the genitals" (id.). However, it cannot be discerned on this record whether the other videos that the People claim were found on the AO's iPhone, including those portraying someone masturbating, urinating, and defecating, constitute a child less than 16 years old lewdly exhibiting that child's genitals. Therefore, the Court rejects the People's argument that the AO himself committed a "series of acts over a period of time" as an aggravating factor to find the existence of extraordinary circumstances, as doing so would reach a flawed conclusion. Abundant case law makes clear that one of the aggravating factors for judicial consideration is whether the AO "committed a series of crimes over multiple days" — not a series of acts as the People suggest (People v S.B., 85 Misc 3d 1213[A], *3 [Youth Part, Erie County 2025]; accord People v A.M., 82 Misc 3d 1249[A] at *7; People v S.G., 80 Misc 3d 1206[A], at *2). Hence, the People incorrectly conflate this factor.
Further, the AO's criminal behavior in this instance demonstrates the kind of extremely poor judgment and impetuous conduct that militates in favor of removal to the family court in order to redirect his errant path. In fact, this is the first time that he is facing any criminal proceedings and is being brought into court to defend a criminal charge that he is stands accused of.
What's more, the People failed to overcome their burden of demonstrating that the AO is not amenable to or would not benefit from the heightened services provided in family court (see People v K.K., 82 Misc 3d 1218[A], *3 [Youth Part, Erie County 2024]). Critically, this was not discussed at all in their moving papers.
The AO urges that removal is proper here because he can benefit from the heightened services available in family court. Since the date of the alleged offense, the AO has graduated high school and is now attending college without issue. While in high school, the AO won several awards and recognitions for cheerleading. He was on the honor roll in his senior year of high school. Consideration is also given to the AO's high school record showing a degree of commitment to academic and athletic achievements. The record establishes that the AO did not [*8]have any incidents of disciplinary action while attending high school. The AO just recently completed his freshman year of college. And importantly, the AO is a first-time offender with no prior criminal history.
Furthermore, the AO has enrolled in therapy which, at a minimum, demonstrates some desire for rehabilitative services. On this point, the AO adduced proof that he intends to complete SOTP. He submitted a treatment verification letter, dated June 10, 2025, from Valerie Gelo, a licensed mental health counselor (LMHC-D), specializing in forensic psychology. Gelo states in her letter that the AO is attending weekly individual psychotherapy sessions, which began on May 16, 2025, to address his mental health issues. Gelo describes the SOTP in her letter, noting that such treatment is conducted in accordance with the Association for the Treatment of Sexual Abusers ("ATSA"). Gelo further states in her letter that the AO has attended four sessions so far and has presented as "cooperate and responsive to the therapeutic process." Gelo adds that she has provisionally diagnosed the AO with adjustment disorder with mixed anxiety and depressed mood, pending further assessment and clinical observations. Gelo opines in the letter that clinical treatment for the AO is recommended to address persistent symptoms, to continually monitor his progress, and to adjust the treatment plan as clinically necessary in working toward sustained improvement and established goals. Such, at least, suggests a willingness on the AO's part to begin and comply with potentially other heightened services that he can avail himself of in family court.
Considering the totality of the circumstances, the Court finds that the AO is probably in greater need of the heightened services available in family court to aid him in addressing his behaviors and help him develop the tools and skills necessary for rehabilitation. The Court adds that in enacting the Raise the Age Law, the Legislature concluded that adolescent offenders, such as the AO here, should be treated differently than adult criminal defendants within the criminal justice system given the unique circumstances and needs of the young population. The aspirational goal of that scheme is that "children who are alleged to have committed crimes be rehabilitated rather than incarcerated and punished" (People v J.L., 78 Misc 3d 1231[A] at *3). Removal to family court furthers the Legislature's articulated policy goals.
Cases where extraordinary circumstances were found, and removal was blocked in the Youth Part, are most often predicated on the offender engaging in thoughtless violent crimes with other youth offenders using deadly weapons. Those cases include armed robbery with other youth (see People v B.T., 73 Misc 3d 1238[A], *7-8 [Co Ct, Nassau County 2021]); repeatedly stabbing someone with a kitchen knife (see People v V.M., 73 Misc 3d 1224[A], *3-4 [Co Ct, Nassau County 2021]); firing a handgun where the codefendants, acting in concert, were facing firearm-related offenses and attempted murder in the second degree (see People v R.U., 70 Misc 3d 540, 541-548 [Co Ct , Nassau County 2020]; People v D.S., 69 Misc 3d 1214[A], *1 [Co Ct, Nassau County 2020]); a brutally violent attack where codefendants repeatedly punched, stomped, and kicked a person who was unconscious and helpless, without signs to discontinue the assault until the codefendants were eventually restrained (see People v C.S., 68 Misc 3d 1208[A], *4 [Fam Ct, Onondaga County 2020]); armed robbery using a collapsible type of knife with a 3½ inch blade, where the victim was cut on both hands and suffered deep lacerations, exposing the victim's bones and arteries in both hands, which required approximately 30 stitches and caused the victim severe bleeding and substantial pain (see People v K.F., 67 Misc 3d 1215[A], *2-5 [Co Ct, Nassau County 2020]); and where codefendants, both charged with attempt to commit the crime of gang assault in the first degree, first provoked a homeless man [*9]suffering from mental health issues, and then proceeded to taunt, punch, and kick him repeatedly in his head, causing the man to suffer a broken nose with significant swelling to his head requiring hospitalization, all while an uncharged individual recorded the incident on video and livestreamed it on "Facebook Live" (see People v Y.L., 64 Misc 3d 664, 665 [Co Ct, Monroe County 2019]).
"Reform is about changing the dynamics. The intent of the [Raise the Age Law] is to give adolescent and juvenile offenders an opportunity to rehabilitate. The goal is avoidance of criminal records and incarceration when possible and in appropriate circumstances" (People v D.P., 62 Misc 3d 1226[A], *3 [Fam Ct, Erie County 2019]).
Removal to family court does not mean that the AO is getting a free pass. There are still potential consequences in transferring this case to family court — which will result in a juvenile delinquency proceeding being prosecuted against him under Family Court Act article 3.
The undersigned is aware that even upon removal, the Family Court Act provides for the possible placement upon adjudication at a facility developed for treatment while protecting the public. This Court is cognizant that various beneficial services and programs are available for a troublesome juvenile who is put into placement. This matter can be effectively adjudicated in family court where either rehabilitation or detention can be imposed. Having considered the totality of the record, this matter does not present to be so extraordinary as a basis for retaining the case in the Youth Part.
To rehash, "New York State Assembly members debating the Raise the Age legislation indicated that the extraordinary circumstances requirement was intended to be a high standard for the District Attorney to meet, and denials of transfers to Family Court should be extremely rare" (People v S.G., 80 Misc 3d 1206[A] at *2 [internal quotation marks and citation omitted] [emphasis added]). While the undersigned decidedly recognizes the graphic and disturbing nature of this crime and the potential impact of the AO's alleged conduct on the community as a whole, the Court is left to construe the statutory language based upon its own discretion and experience and it must respect the spirit and intent of the Raise the Age Law. The Court is thus bound by the language of the statute and finds that the People's motion to prevent removal to family court must be denied (see People v J.B., 63 Misc 3d 424, 428 [Co Ct, Westchester County 2019]).
V. Conclusion
In sum, the Court holds that extraordinary circumstances do not exist here to prevent the removal/transfer of this case to the family court. The Court further concludes that the People did not meet their very high burden to prevent removal. Based on the totality of the circumstances, and after balancing the aggravating factors and mitigating factors in this case, the Court finds that the aggravating factors do not outweigh the mitigating circumstances. The People failed to establish the existence of "extraordinary circumstances" to warrant retention of this matter in the Youth Part (see People v B.H., 63 Misc 3d at 248-250). Therefore, this case shall be removed to the Family Court, Putnam County in accordance with the findings made herein.
To the extent not specifically addressed herein, the parties remaining contentions have been evaluated and determined to be without merit. Accordingly, it is hereby:
Ordered that the People's motion, made pursuant to CPL 722.23, to prevent removal of this case to the Family Court is 
DENIED; and it is further
Ordered that this case shall be transferred to the Family Court, Putnam County, with the undersigned as the assigned judge; and it is further
Ordered that the Youth Part file shall be sealed, as is required by CPL 725.15; and it is further
Ordered that the defendant K.T., his attorney(s), and members of the Putnam County Probation and Law Departments shall appear in Family Court, on August 19, 2025, at 2 p.m., before the undersigned for further proceedings thereon.
A separate Order of transfer/removal shall issue herewith by the Clerk of the Court.[FN8]

This constitutes the opinion, decision, and order of the Court.
Dated: July 18, 2025
Carmel, New York
E N T E R:
Hon. Anthony R. Molé
Judge of the County Court

Footnotes

Footnote 1:The six-day felony hearing was unnecessary here since the AO was not charged with a class A felony or a violent felony (see CPL 722.23 [2] [a]-[c]; People v K.S., 84 Misc 3d 319, 326 [Sup Ct, Richmond County 2024]).

Footnote 2:By waiving the statutory six-day hearing, the parties have, in effect, agreed that the Court base its determination to remove the case to family court solely on the People's underlying motion to block removal.

Footnote 3:Parenthetically, the People filed an amended notice of motion on May 19, 2025. The People's filings are virtually identical, with the exception that their amended motion removes the People's reference to a certain video exhibit that was initially annexed to their original moving papers.

Footnote 4:There appears to be a notable error in the accusatory instrument. The factual allegations in the felony complaint allege that the AO was allegedly "promoting a sexual performance by a child," which under New York Law, is an entirely different offense codified in Penal Law § 263.15, as a class D felony (see id.).

Footnote 5:Assuming that Meury's written statement was submitted in proper form, it would not change the outcome of this Court's decision.

Footnote 6:"Sexual Performance" is defined as "any performance or part thereof which includes sexual conduct by a child less than sixteen years of age" (Penal Law § 263.00 [1]). The term "'[s]exual conduct' includes "actual or simulated . . . anal sexual contact" and "lewd exhibition of the genitals" (id. at § [3]). And "performance" is defined as "any play, motion picture, photograph or dance" (id. at § [4]; see People v Kent, 19 NY3d 290, 300 [2012]; People v Fraser, 96 NY2d 318, 326-327 [2001], cert denied 533 US 951 [2001]).

Footnote 7:Other sentencing options may be available if the AO is adjudicated a youthful offender under CPL Article 720.

Footnote 8:The statute uses the terms "removal" and "transfer" interchangeably regarding the transfer of youth part adolescent offender proceedings to the Family Court. Neither term is defined in the Raise the Age Law. CPL 722.23 (1) (g) states that cases "transferred pursuant to this section . . . shall not be considered removals subject to [Family Court Act § 308.1 (13)]" (see Family Ct Act § 308.1 [3]; People v D.L., 62 Misc 3d 900, 901 n 1 [Fam Ct, Monroe County 2018]).